UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

FLOYD W. AMBERG

        Plaintiff,

     v.                      **REPORT AND RECOMMENDATION**
                                      **08-CV-00967 (LEK)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.    Introduction

Plaintiff Floyd W. Amberg brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") benefits.[1]

## II.    Background

Plaintiff protectively applied for SSI benefits on July 15, 2005,[2] initially alleging a disability onset date of October 1, 1998 (R. at 110).[3] Plaintiff later amended his alleged onset date to January 6, 2004 (R. at 149). Plaintiff alleges disability due to asthma, a back impairment, cluster headaches, anxiety, depression, and carpal tunnel syndrome. His application was denied initially on December 9, 2005 (R. at 54-57). Plaintiff filed a request for a hearing on January 6, 2006 (R. at 58).

On October 11, 2007, Plaintiff appeared before the ALJ (R. at 720-48). The ALJ

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated February 5, 2010.
[2] It appears Plaintiff had applied for disability benefits on at least one earlier occasion (R. at 72-75). The case before the Court case resulted from Plaintiff's appeal of his July 15, 2005 application. Plaintiff's Brief, p. 2; (R. at 16). The Court will not discuss Plaintiff's other applications here.
[3] Citations to the underlying administrative record are designated as "R."

considered the case *de novo* and, on November 20, 2007, issued a decision finding Plaintiff not disabled (R. at 16-29). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on July 22, 2008 (R. at 7-10). On September 12, 2008, Plaintiff filed this action.

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings. [4]

### III.    Discussion

### A.    Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant

---

[4] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed

susceptible to more than one rational interpretation, the Commissioner's conclusion

must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258

(2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must

be sustained "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the

[Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other

words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review."

Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[5] to

---

[5]The five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to

determine whether an individual is disabled as defined under the Social Security Act.

See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

Based on the entire record, the Court recommends that the ALJ's decision be affirmed.

## B.    Analysis

### 1.  The Commissioner's Decision

The ALJ made the following findings with regard to factual information as well as

---

perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

the five-step process set forth above: first, the ALJ found that Plaintiff had not engaged

in substantial gainful activity as of his application date, July 15, 2005 (R. at 18). At step

two, the ALJ found Plaintiff's "asthma, degenerative disc disease, and an adjustment

disorder with a depressed mood" to be severe impairments. Id. Plaintiff's headaches

were found to be non-severe (R. at 19). The ALJ determined next that Plaintiff "d[id] not

have an impairment or combination of impairments that me[t] or medically equal[ed] one

of the listed impairments in 20 CFR 404, Subpart P, Appendix 1" (R. at 19). At step four,

the ALJ found that Plaintiff retained

> the residual functional capacity to lift and/or carry 10 pounds occasionally,
> c[ould] stand and/or walk 2 hours in an 8-hour day, sit 6 hours in an 8-hour
> day, and push and/or pull 10 pounds. He c[ould] occasionally climb, stoop,
> kneel, crouch, and crawl; and should limit his exposure to respiratory
> irritants. [Plaintiff] c[ould] understand, carry out, and remember simple
> instructions; respond appropriately to supervision, coworkers, and usual
> work situations; and deal with changes in a routine work setting

(R. at 21). Plaintiff's "statements concerning the intensity, persistence, and limiting

effects of [his] symptoms [we]re [found to be] not entirely credible" (R. at 26). At the time

of Plaintiff's application, Plaintiff was a younger individual with at least the equivalence

of a high school education (R. at 27). Based upon Medical-Vocational Guideline Rule

201.28,[6] the ALJ found that Plaintiff could perform jobs in the national economy in

significant numbers (R. at 27-29). Ultimately, the ALJ found that Plaintiff was not under

a disability at any time from the date of his application through the date of the ALJ's

decision (R. at 29).

## 2.  Plaintiff's Claims

---

[6] Medical-Vocational Rule 201.28 directs a finding of not disabled for a younger individual, who was a
high school graduate, with non-transferable skills from skilled or semiskilled past work, and capable of
performing sedentary work. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 201.28.

Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor made in accordance with the proper legal standards. Specifically, Plaintiff argues that the ALJ a) erred in evaluating the opinions from the Social Security Administration ("SSA") consultative examiners; b) erred in applying the treating physician rule; c) erred in analyzing Plaintiff's credibility; d) erred in failing to find Plaintiff's carpal tunnel syndrome to be a severe impairment; and e) erred in failing to articulate the evidence on which the residual functional capacity ("RFC") was based.

### a) The ALJ Did Not Err in Evaluating the Opinions from the Physical SSA Consultative Examiners

Plaintiff makes the following arguments in regards to the SSA physical consultative examiners: i) the ALJ erred in granting greater weight to the opinions from Dr. James Naughten, than to the opinions from Dr. Berton Shayevitz; ii) the ALJ erred in obtaining Dr. Naughten's opinions; and iii) "there [wa]s no evidence that Dr. Naughton's [sic] [e]xamination was of the proper duration, or performed by a proper source." Plaintiff's Brief, pp. 6-9.

### i) The ALJ Did Not Err in Affording Greater Weight to the Opinions of Dr. Naughten

Plaintiff argues that the ALJ's analysis of weight to afford the opinions from Drs. Shayevitz and Naughten was flawed. Plaintiff's Brief, p. 6-7. Plaintiff further argues that the ALJ erred in affording greater weight to the opinions from Dr. Naughten based on that flawed analysis. Id.

At the request of the SSA, Dr. Shayevitz examined Plaintiff on May 4, 2004 (R. at 327-31). Dr. Shayevitz diagnosed Plaintiff with "1. Chornic obstructive pulmonary disease with chronic bronchitis and sensitivity to some environmental odors and

chemicals. 2) Complaints of low back and neck pain. 3) Poor dentition. 4) Very limited physical findings regarding his back and neck" (R. at 330-31). Dr. Shayevitz opined that Plaintiff "[wa]s moderately limited by his pulmonary disease and low back and neck complaints in terms of sitting, standing, walking, pushing, pulling, lifting, carrying, and exerting himself in anyway [sic]" (R. at 331).

Plaintiff attended a subsequent SSA consultative examination with Dr. Naughten on September 16, 2005 (R. at 456-59). Dr. Naughten diagnosed Plaintiff with "1. Asthma, as per history. 2) Low back pain, as per history. 3) Bipolar disease, as per history" (R. at 459). Dr. Naughten opined that Plaintiff "should avoid all known smoke, dust, and respiratory irritants due to his asthma. . . . . He would have no limitations to seeing, hearing, talking, sitting, standing, pushing, pulling, reaching, and handling objects. Mild limitation to walking. Mild to moderate limitation to lifting, carrying, climbing stairs, and bending." Id.

The ALJ granted "some weight" to Dr. Shayevitz's opinions because the doctor "reviewed an incomplete record" (R. at 24). The ALJ afforded "significant weight" to Dr. Naughten's opinions because the doctor "reviewed a more complete record." Id. The ALJ's findings suggest he believed that both Drs. Shayevitz and Naughten had reviewed Plaintiff's record at their respective examinations. Because Dr. Shayevitz examined Plaintiff first, the ALJ presumably believed that he had less of a record to review thereby diminishing the value of his opinions. However, in the reports from both physicians, neither physician noted reviewing any of Plaintiff's records at the examination (R. at 327-31, 456-59). Thus, it is unclear what, if any, records were reviewed by these physicians. Therefore, there is at least an arguable ambiguity about

7

whether the ALJ's weighing of the consultative examiners' opinions was based upon a correct assessment of the record. However, even giving Plaintiff the benefit of the doubt and finding error as to this aspect of the ALJ's decision, any such error was harmless and not a basis for remand. See Duvergel v. Apfel, No. 99 Civ. 4614, 2000 WL 328593, at *11 (S.D.N.Y. Mar.29, 2002); Walzer v. Chater, 93 Civ. 6240, 1995 WL 791963 at *9 (S.D.N.Y. Sept.26, 1995) (ALJ's failure to discuss a treating physician's report was harmless error where consideration of report would not have changed outcome); see also Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1996) (harmless error rule applies to review of denial of disability benefits).

Despite affording greater weight to the opinions from Dr. Naughten, the ALJ's RFC determination is also consistent with Dr. Shayevitz's opinions. Indeed, the ALJ's RFC is supported by the opinions from both Dr. Shayevitz and Dr. Naughten. For example, Dr. Shayevitz opined that Plaintiff experienced moderate limitations for "sitting, standing, walking, pushing, pulling, lifting, carrying, and exerting himself in anyway [sic]" (R. at 331). These opinions support the ALJ's conclusion that Plaintiff could "lift and/or carry 10 pounds occasionally, stand and/or walk 2 hours in an 8-hour day, sit 6 hours in an 8-hour day, and push and/or pull 10 pounds" (R. at 21). Thus, despite stating that greater weight was afforded to Dr. Naughten's opinions, the ALJ's RFC is clearly in line with Dr. Shayevitz's opinions.

Therefore, although the ALJ's stated reasons for discounting Dr. Shayevitz's opinions may not have been supported by the record, any error in this regard was harmless because the ALJ's RFC finding is consistent with both opinions. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal

8

principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").

### ii)  The ALJ Did Not Err in Obtaining Dr. Naughten's Opinions

Plaintiff argues that the ALJ erred in obtaining a second consultative examination before re-contacting Plaintiff's treating sources and previous consultative examiner, Dr. Shayevitz. Plaintiff's Brief, p. 7-8. Plaintiff does not indicate which treating sources should have been re-contacted. The Court assumes Plaintiff is referring to the Veterans Affairs ("VA") Clinic.[7]

The ALJ will order a consultative examination when "the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source." 20 C.F.R. § 404.1512(f). However, "[g]enerally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources." Id. Here, the Court can find no error in the ALJ's decision to obtain a second physical consultative examination.

Plaintiff has failed to articulate what evidence concerning his physical impairments should have been obtained from the VA Clinic or Dr. Shayevitz. The record before the ALJ contained numerous treatment notes from the VA Clinic (R. 399-403, 550-718); as well as a physical RFC assessment, completed by Dr. Viglietta, Plaintiff's treating physician at the VA Clinic (R. at 664). Dr. Shayevitz's report included Plaintiff's

---

[7] In several disability reports, Plaintiff repeatedly indicated that the VA was his primary care source (R. at 101. 121, 145). The VA Clinic also prescribed all Plaintiff's medications (R. at 102, 122, 146). At Plaintiff's hearing he mentioned two medical sources: Dr. Anthony Viglietta and Ms. Judy Wilburn, nurse practitioner (R. at 734, 735, 740, 741). Both are medical sources at the VA Clinic (R. at 101, 145). Furthermore, at other points in Plaintiff Brief, he stated that Dr. Viglietta was his treating physician at the VA Clinic. Plaintiff's Brief, p. 3.

complaints and history, diagnoses, prognosis, examination test results, and an opinion

of what Plaintiff could perform despite his impairments (R. at 327-35). Thus, according

to the Regulations, Dr. Shayevitz's report was complete. See 20 C.F.R. § 404.1519n(c)

(indicating what elements a consultative examiner should include in his report).

Therefore, without a clearly articulated argument from Plaintiff, the Court cannot

determine what evidence was missing and required re-contacting either the VA Clinic or

Dr. Shayevitz.

Furthermore, the Court notes that the decision as to whether to obtain a

consultative examination is at the discretion of the ALJ. See Hanratty v. Chater, 1997

WL 631024, at *5 (W.D.N.Y. 1997) (citing 20 C.F.R. § 404.1517) ("an ALJ has discretion

to order a consultative examination where she deems it is warranted"); see also

Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989) (citing Jones v. Bowen, 829

F.2d 524, 526 (5th Cir. 1987)) ("The ALJ has the discretion to order a consultative

examination.").  Also, as noted above, Dr. Naughten's assessment with regard to his

consultative examination was largely consistent with the findings of Dr. Shayevitz.

Thus, the ALJ's decision to seek a second consultative examination does not appear to

have prejudiced Plaintiff in any respect.

Therefore, the Court can find no error in the ALJ's acquisition of a second

physical consultative examination without first re-contacting the VA Clinic or Dr.

Shayevitz.

### iii) The ALJ Did Not Err by Relying on Dr. Naughten's Opinions

Plaintiff effectively argues that the ALJ erred in relying on Dr. Naughten's

opinions because "[t]here [wa]s no evidence that Dr. Naughton's [sic] [e]xamination was

of the proper duration, or performed by a proper source." Plaintiff's Brief, p. 8.

Plaintiff's arguments are meritless. The Regulations set forth the minimum amount of time an examiner should schedule for each claimant. 20 C.F.R. § 404.1519n(a). Because Dr. Naughten was performing a general physical examination, he was required to set aside at least thirty minutes for Plaintiff's examination. § 404.1519n(a)(1). However, Plaintiff fails to cite any evidence from the record to substantiate his claim that Dr. Naughten's examination was not of the proper duration.

Furthermore, the report from a consultative examiner should include:

(1) Your major or chief complaint(s);
(2) A detailed description . . . of the history of your major complaint(s);
(3) A description, and disposition, of pertinent "positive" and "negative" detailed findings based on the history, examination and laboratory tests related to the major complaint(s), and any other abnormalities or lack thereof reported or found during examination or laboratory testing;
(4) The results of laboratory and other tests (e.g., X-rays) performed . . .;
(5) The diagnosis and prognosis for your impairment(s);
(6) A statement about what you can still do despite your impairment(s), . . . . .; and
(7) In addition, the medical source will consider, and provide some explanation or comment on, your major complaint(s) and any other abnormalities found during the history and examination or reported from the laboratory tests. . . .

20 C.F.R. § 404.1519n(c)(1)-(6). Here, Dr. Naughten's report contained all the required elements (R. at 456-60). Thus, because there is no evidence to the contrary, and Dr. Naughten submitted all the required evidence in his report, the Court concludes that Dr. Naughten's examination was the required length.

Plaintiff's second argument, that Dr. Naughten was an improper source, is also meritless. Plaintiff again cites to no evidence from the record to support his contention. According to the Regulations,

(a) We will purchase a consultative examination only from a qualified medical source. The medical source may be your own physician or psychologist, or another source. . . . .
(b) By "qualified," we mean that the medical source must be currently licensed in the State and have the training and experience to perform the type of examination or test we will request; the medical source must not be barred from participation in our programs under the provisions of § 404.1503a.[8] . . . .
(c) The medical source we choose may use support staff to help perform the consultative examination. Any such support staff (e.g., X-ray technician, nurse) must meet appropriate licensing or certification requirements of the State. . . .

20 C.F.R. § 404.1519g. The Court could not find, nor does Plaintiff cite, any evidence in the record suggesting that Dr. Naughten was not a "qualified" source as defined in the Regulations. Thus, Plaintiff's second argument must also fail.

Because the Court finds both of Plaintiff's arguments meritless, the ALJ did not err in relying on Dr. Naughten's opinions.

### b)  The ALJ Did Not Err in Applying the Treating Physician Rule

Plaintiff argues that the ALJ erred in applying the treating physician rule in analyzing the opinions from Dr. Viglietta, Plaintiff's treating physician at the VA Clinic. Plaintiff's Brief, pp. 9-15.

On April 27, 2007, Dr. Viglietta completed a physical RFC assessment solely evaluating Plaintiff's exertional limitations[9] (R. at 664). Dr. Viglietta opined that Plaintiff could occasionally lift ten pounds; frequently lift five pounds; stand and/or walk less than two hours in an eight-hour day; and sit in an upright position less than four hours in an

---

[8] "We will not use in our program any individual or entity, . . . who is currently excluded, suspended, or otherwise barred from participation . . . any . . . Federal or Federally-assisted program; whose license to provide health care services is currently revoked or suspended by any State licensing authority . . .; or who, until a final determination is made, has surrendered such a license while formal disciplinary proceedings involving professional conduct are pending." 20 C.F.R. § 404.1503a.
[9] Exertional limitations include "sitting, standing, walking, lifting, carrying, pushing, and pulling." 20 C.F.R. § 404.1569a(b).

eight-hour day. Id.

According to the "treating physician's rule,"[10] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).  "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand."  Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

The ALJ considered Dr. Viglietta's opinions and ultimately granted the report "limited weight" (R. at 25). The ALJ reasoned that "the objective medical evidence of record does not support this degree of limitation" and "this opinion is inconsistent with other opinions of record and [Plaintiff's] activities of daily living." Id. The ALJ's analysis is supported by substantial evidence.

Despite stating that Dr. Viglietta's opinions were afforded "limited weight," those opinions were largely consistent with the exertional portion of ALJ's RFC.[11] For example, Dr. Viglietta opined that Plaintiff could occasionally lift and carry ten pounds (R. at 664). The ALJ similarly found that Plaintiff was capable of occasionally lifting and/or carrying ten pounds (R. at 21). Dr. Viglietta opined that Plaintiff was limited to standing and/or walking for less than two hours in an eight-hour day (R. at 664). This is

---

[10] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

[11] The ALJ also found Plaintiff experienced non-exertional limitations (R. at 21). Dr. Viglietta did not evaluate any non-exertional restrictions.

fairly consistent with the ALJ's finding that Plaintiff was limited to standing and/or walking for two hours in an eight-hour day (R. at 21).

The only function in which Dr. Viglietta's opinions and the ALJ's RFC finding differed more than slightly was Plaintiff's ability to sit. Dr. Viglietta opined that Plaintiff could sit for less than four hours in an eight-hour day, whereas the ALJ based his finding that Plaintiff could sit for six hours in an eight-hour day on the opinions of Dr. Naughton and other health professionals who reviewed Plaintiff's records.  (R. at 21, 664). The ALJ's finding is supported by several opinions of record. For example, Dr. Naughten, an SSA consultative examining physician, opined that Plaintiff had no limitation to sitting (R. at 459). A request for medical advice was made on June 8, 2004, presumably by the Commissioner (R. at 336). Dr. Alan Auerbach, after reviewing Plaintiff's records,[12] found that "[a]lthough there [we]re complaints of pain, the imaging studies and objective physical findings have been quite benign. [Plaintiff] should be capable of medium work." Id.  Dr. Auerbach's use of the term "medium work"[13] as it is defined in the Regulations, necessarily included a finding that Plaintiff could perform sedentary work.  Thus, by implication, Dr. Auerbach found Plaintiff capable of sitting for six hours. Social Security Ruling 83-10, 1983 WL 31251, at *5 (S.S.A.) (sedentary work generally requires the ability to sit for six hours in an eight-hour workday). Also, the two disability analysts reviewing Plaintiff's record both found him capable of sitting for six hours (R. at 338, 523). "In addition, as the ALJ noted, Dr. Viglietta's assessment was at least somewhat contradicted by Plaintiff's activities of daily living, which included

---

[12] The form does not state what records were reviewed (R. at 336).
[13] If an individual is capable of performing medium work, he is also capable of performing sedentary work. 20 C.F.R. § 404.1567(c).

babysitting, working as a cashier, shopping, and using the computer for extended periods."

Thus, because Dr. Viglietta's opinions conflicted with other opinions of record, the ALJ did not err in denying controlling weight to Plaintiff's treating physician. See Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) (internal citations removed) ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence."); Social Security Ruling 96-6p, 1996 WL 374180 at *3 (S.S.A.) ("In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.").

Therefore, the Court can find no error in the ALJ's denial of controlling weight to Dr. Viglietta's opinions.

### c)  The ALJ's Credibility Analysis is Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in evaluating his credibility. Plaintiff's Brief, pp. 16-18.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)).

15

In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p, 1996 WL 374186, at *2. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c); Borush, 2008 WL 4186510, at *12. Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[14] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

If the ALJ finds Plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987)).

The ALJ's credibility evaluation is supported by substantial evidence. First, the ALJ completed the two-step credibility analysis by finding that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence, and

---

[14] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms; (vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

limiting effects of these symptoms [we]re not entirely credible" (R. at 26). The ALJ then

went on to consider several of the factors (R. at 26). For example, the ALJ considered

Plaintiff's daily "activities including shoveling, computer work, babysitting, and meeting

his own personal care needs" (R. at 27). The ALJ also noted that Plaintiff's symptoms

improved when he was compliant with his medications (R. at 26-27).

 While unclear, Plaintiff's Brief could be read to argue that the ALJ erred in failing

to consider Plaintiff's "solid working history" when evaluating his credibility. Plaintiff's

Brief, p. 18. However, the Court can find no error. "[A]lthough ALJs are specifically

instructed that credibility determinations should take account of 'prior work history,' and

a good work history may be deemed probative of credibility, work history is just one

factor used to assess the credibility of Plaintiff's subjective complaints." Astolos v.

Astrue, 2009 WL 3333234, at *12 (W.D.N.Y. Oct. 14, 2009) (internal quotations and

citations removed).

 Thus, although the ALJ failed to explicitly consider Plaintiff's work history in his

credibility analysis, the Court declines to remand on that basis because the ALJ's

evaluation is otherwise supported by substantial evidence. Furthermore, when

determining whether Plaintiff was capable of performing his past relevant work, the ALJ

noted that "1995 was the only year the claimant's earnings reached the substantial

gainful activity level" (R. at 27). Thus, the ALJ at least implicitly considered Plaintiff's

work history in determining his disability and, in any event, it is not clear that Plaintiff's

work history would have entitled him to any additional credibility.

 Therefore, the ALJ's credibility analysis is supported by substantial evidence.

  **d)  The ALJ's Failure to Find Plaintiff's Carpal Tunnel Syndrome**

**to be Severe is Supported by Substantial Evidence**

Plaintiff argues that the ALJ erred in failing to find Plaintiff's carpal tunnel syndrome to be a severe impairment. Plaintiff's Brief, p. 6.

The Court finds Plaintiff's argument meritless. First, Plaintiff makes the argument only in passing and fails to cite any evidence in the record to support his contention. Second, neither physical consultative examiner found any hand or wrist impairments. Indeed, both Dr. Shayevitz and Dr. Naughten found that Plaintiff's "[h]and and finger dexterity [we]re intact. Grip strength [wa]s 5/5 bilaterally" (R. at 330, 458). Finally, Plaintiff's record was reviewed by a disability analyst on June 28, 2004 (R. at 337-42), and again on December 2, 2005 (R. at 522-27). Neither analyst found Plaintiff afflicted with a manipulative impairment (R. at 339, 524).

Therefore, the ALJ's failure to find Plaintiff's carpal tunnel syndrome to be a severe impairment is supported by substantial evidence.

**e)  The ALJ Adequately Articulated the Basis for the RFC**

Plaintiff argues that the ALJ erred in failing to state the evidence on which the RFC was based. Plaintiff's Brief, p. 6.

An individual's "residual functional capacity is the most you can still do despite your limitations."  20 C.F.R. § 404.1545(a)(1). In order to determine a claimant's RFC, the ALJ must assess "all of the relevant medical and other evidence."  § 404.1545(a)(3). Also, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work…." "on a regular and continuing basis." §§ 404.1545(a)(4), (b).  Regular and continuing basis is defined as "8 hours a day, for five days a week, or an equivalent work schedule."  SSR 96-8p, 1996 WL 374184, at *1.

18

The failure to specify the basis for the RFC is grounds for remand. See Hogan v. Astrue, 491 F.Supp.2d 347, 354 (W.D.N.Y. 2007) (quoting Social Security Ruling 96-8p, 1996 WL 374184, at *7 (S.S.A.)) ("It is well-settled that '[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'"); See also White v. Sec'y of Health & Human Servs., 910 F.2d 64, 65 (2d Cir. 1990) ("[T]he failure to specify the basis for a conclusion as to residual functional capacity is reason enough to vacate a decision of the Secretary . . . .").

Here, the ALJ found that Plaintiff retained

the residual functional capacity to lift and/or carry 10 pounds occasionally, c[ould] stand and/or walk 2 hours in an 8-hour day, sit 6 hours in an 8-hour day, and push and/or pull 10 pounds. He c[ould] occasionally climb, stoop, kneel, crouch, and crawl; and should limit his exposure to respiratory irritants. [Plaintiff] c[ould] understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting

(R. at 21).

After reviewing the ALJ's decision, the Court finds that the ALJ adequately articulated the basis for the RFC. The ALJ fully discussed, and weighed, the opinions from the following sources (R. at 24-26): Dr. Shayevitz, an SSA consultative physical examiner (R. at 327-31); Dr. Alan Auerbach, an SSA non-examining physician who reviewed Plaintiff's physical impairments (R. at 336); two SSA non-examining disability analysts (R. at 337-42, 522-27); Dr. Naughten, an SSA consultative physical examiner (R. at 456-59); Dr. Viglietta, Plaintiff's treating physician at the VA Clinic (R. at 664); Dr. Shapiro, an SSA consultative psychological examiner (R. at 322-26, 451-55); and Dr.

Ed Kamin, an SSA non-examining review psychologist (R. at 518-21, 528-41).

Based on the ALJ's discussion of these sources, the Court can discern how the ALJ arrived at the RFC. For example, as previously stated, the exertional portion of the RFC is largely consistent with Dr. Viglietta's opinions. Supra Part III.B.2.b. The only function in which Dr. Vilglietta's opinions and the ALJ's RFC significantly differ, is in Plaintiff's ability to sit. In determining that Plaintiff retained the ability to sit for six hours, the ALJ noted Dr. Shayevitz's opinion of moderate limitations (R. at 24, 331); Dr. Naughten's opinion of no limitations (R. at 24, 459); and the opinions from both disability analysts finding Plaintiff capable of sitting for six hours (R. at 24, 338, 523). Thus, it is clear how the ALJ arrived at Plaintiff's ability to lift and/or carry ten pounds occasionally, stand and/or walk for two hours, and sit for six hours.

The ALJ also found that Plaintiff "c[ould] understand, carry out and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting" (R. at 21). These findings are consistent with the opinions from Dr. Jeanne Shapiro, the two-time SSA consultative examining psychologist (R. at 24-25, 325, 454); and Dr. Kamin, the SSA non-examining review psychologist (R. at 26, 518-21).

Therefore, because the ALJ engaged in a detailed discussion of the various medical opinions, the Court finds that the ALJ's RFC finding was clearly articulated.

## IV.    Conclusion

After carefully examining the administrative record, the Court finds that substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ

thoroughly examined the record, afforded appropriate weight to all the medical

evidence, including Plaintiff's treating sources, and afforded Plaintiff's subjective claims

of limitations an appropriate weight when rendering his decision that Plaintiff is not

disabled. The Court finds no reversible error.  Because the Court further finds that

substantial evidence supports the ALJ's decision, it is respectfully recommended that

Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion

for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner

be affirmed.


Respectfully submitted,

_____
Victor E. Bianchini
United States Magistrate Judge


DATED:        Syracuse, New York
              May 24, 2010

**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby


**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.


**ANY OBJECTIONS** to this Report and Recommendation must be filed with the

Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in

accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

   **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

 *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

   Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge


          Syracuse, New York
DATED:    May 24, 2010